FREDERICK BECK, Appellant, *v.* THE PHŒNIX INSUR-
ANCE COMPANY, Respondent.

*Tonnage of vessel — not limited to statute ton of this State.*

A policy of insurance issued upon a vessel in the city of New York contained
the following provision: "Warranted not to load more than her registered
tonnage with lead, marble, coal or iron on any one passage." The registered
tonnage of the vessel was 916 tons.

*Held,* that the word ton, as used in the warranty, was not limited to that pre-
scribed by the statute of this State (chapter 134 of 1851) to wit, to 2,000 pounds,
but meant such weight as was recognized by the laws of Congress, or by estab-
lished commercial usage at the time.

*Held,* further, that loading the vessel with 901 11-20 tons of coal, at the rate of
2,240 pounds to the ton, was not a breach of the warranty.

Appeal from a judgment dismissing the plaintiff's complaint.

*J. A. Shoudy,* for the appellant.

*Jas. A. Black,* for the respondent.

Davis, P. J.:

This action is upon a policy of insurance made by the defend-
ant, at the city of New York, on the ship Elise Ruger, insuring
her in the sum of $5,000. The policy contained the following
provision: "Warranted not to load more than her registered ton-
nage with lead, marble, coal, or iron, on any one passage." The
"registered tonnage" of the ship was shown to be 916 tons. In
May, 1866, she took at the port of New York a cargo of coal to
be carried to a port in Japan, and gave a bill of lading for 901$\frac{11}{20}$
tons of coal at the rate of 2,240 pounds per ton. She afterward
sailed for her port of destination and was lost. The court below
dismissed the complaint, and gave judgment of nonsuit, on the
ground that the warranty above quoted was broken. The court
rejected various offers of parol evidence to show usage or custom
in such cases, and held in substance that the statute of this State
fixing the standard of weights and measures, and defining a ton to
be 2,000 pounds, controlled the contract of insurance in this case.

The registered tonnage of vessels is ascertained by rules provided by the act of Congress, and the word "tonnage," in this country, when applied to ships, signifies "the internal cubical capacity in tons of 100 cubic feet each, to be ascertained in the manner prescribed by Congress." (*Inman Steamship Co.* v. *Tinker*, 94 U. S., 243; U. S. R. S., § 4153.)

The registered tonnage of vessels is purely a subject of Federal regulation, and not at all dependent upon or controlled by the legislation of the several States. A contract, therefore, which adopts "the registered tonnage" of a ship as the limit to which her cargo shall be subjected, must be construed as having reference to the laws of Congress, and as meaning such weight per ton as is recognized by those laws or by established commercial usage at the time those laws were enacted. Otherwise, the registered tonnage of vessels would be a variable quantity, dependent upon the statutes of the several States or upon the usages and customs of different localities in the absence of statutes. In those States in which a ton is declared, either by statute or commercial usage, to consist of twenty hundred-weight of 112 pounds each, the registered tonnage of a vessel would be different from that in such States as declared by statute that a ton shall be 2,000 pounds; and hence contracts of this character, although referring to a measurement prescribed by the laws of Congress, would depend for their interpretation upon the laws of the locality where the vessel chanced to take her cargo.

Our statutes regulating weights and measures contains this provision : "All contracts hereafter made within this State for work to be done, or for anything to be sold or delivered by weight or measure, shall be taken and construed according to the standards of weight and measure herein adopted as the standards of this State." (Laws of 1851, chap. 134, § 14; 2 R. S. [6th ed.], 801.) And the same statute prescribes, as to weight, that a ton shall consist of 2,000 pounds.

The court below held that the warranty in the policy, that the cargo of the ship should not exceed her registered tonnage, was to be construed by this section of our statute, and that no parol evidence could be given tending to show that, by established commercial usage, a ton of coal meant a gross ton of 2,240

pounds. This, we think, was error; for, in our opinion, it is not the intent of our statute to control or effect the registered tonnage of sea-going vessels so as to limit the weight that could be carried for each registered ton to 2,000 pounds. This was, we think, left open to be controlled by the laws of Congress or by established commercial usage. So far as relates to imports, the act of Congress of August 30, 1842, fixed the ton at twenty hundred-weight, each hundred-weight being 112 pounds avoirdupois. If the same cargo shipped in this case had been taken at a foreign port, to be brought to this country, there seems to be no reason to doubt that the contract would not have been broken by taking tons of 2,240 pounds each, because, in that case, it would fall directly under the statute just cited, which declares a ton to be twenty hundred-weight of 112 pounds each. We think, by analogy, if there be no express act of Congress upon the subject (and we have been able to find none), the same rule should apply, and it should be held that the registered tonnage was not exceeded by the cargo in this case. In the absence of any statutory prescription controlling the question, it was open to show the established commercial usage, and the offer to do so was erroneously rejected.

The judgment should be reversed and new trial granted, with costs to abide event.

INGALLS, J., concurred.

Present — DAVIS, P. J., BRADY and INGALLS, JJ.

Judgment reversed; new trial granted; costs to abide event.